Filed 4/22/22  In re Jordynn W. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JORDYNN W. et al., Persons Coming Under the Juvenile Court Law. | B314132 (Los Angeles County Super. Ct. No. 21CCJP00997A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. DANIELLE W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Conditionally affirmed, remanded with directions.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Veronica Randazzo, Deputy County Counsel, for Plaintiff and Respondent.

_____

The juvenile court sustained a dependency petition pursuant to Welfare and Institutions Code section 300, subdivisions (a), (b), (d) and (j),[1] alleging Danielle W. and Juwan W., parents of now-five-year-old Jordynn W. and now-one-year-old M.W., had engaged in incidents of domestic violence in the children's presence and were unable to provide proper care for the children due to their substance abuse and Danielle's mental instability. The sustained petition also alleged Juwan had sexually abused Jordynn.

On appeal from the jurisdiction findings and disposition order removing the children from Danielle and Juwan's custody, Danielle argues the grounding of dependency jurisdiction in part on the couple's history of domestic violence was error. She also argues the court and the Los Angeles County Department of Children and Family Services (Department) failed to comply with their duties of inquiry and notice under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.

We conditionally affirm the court's jurisdiction findings and disposition order and remand the matter to allow the Department and the juvenile court to rectify their errors under ICWA and to take all other necessary corrective actions.

---

[1] Statutory references are to this code unless otherwise stated.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Petition and First Amended Petition*

On March 3, 2021 the Department filed a section 300 petition alleging, pursuant to subdivisions (a) and (b), that Danielle and Juwan had a history of engaging in violent altercations in the children's presence that placed the children at substantial risk of serious physical harm. In a separate count pursuant to subdivision (b) the Department alleged Danielle had a history of mental and emotional problems, including diagnoses of depression, anxiety, bipolar disorder and psychosis, which rendered her incapable of providing regular care and supervision for Jordynn and M.W. In addition, the count alleged Juwan knew of Danielle's mental and emotional problems and failed to protect the children.

On April 14, 2021 the Department filed a first amended petition, which added allegations pursuant to section 300, subdivision (b), that Danielle and Juwan had histories of substance abuse, including recent (for Danielle) and current (for Juwan) substance abuse that rendered them incapable of providing regular care and supervision for the children. The amended petition also added allegations pursuant to subdivisions (d) and (j) that Juwan had sexually abused Jordynn, which placed the children at substantial risk of harm.

2. *The Jurisdiction and Disposition Hearing*

At the jurisdiction/disposition hearing on July 16, 2021 the juvenile court sustained all the allegations in the first amended petition. The court declared Jordynn and M.W. dependents of the court and removed them from their parents' custody. The court

3

ordered monitored visitation for Danielle and Juwan as well as family reunification services.

Danielle filed a timely notice of appeal.

## DISCUSSION

1. *Danielle's Challenge to the Jurisdiction Findings Based on Domestic Violence Is Not Justiciable*

Danielle does not challenge the juvenile court's exercise of jurisdiction over Jordynn and M.W. based on the sustained allegations Danielle had a history of mental and emotional problems and Danielle and Juwan had histories of substance abuse and were recent or current substance abusers, all of which rendered them unable to provide regular care for the children, endangered the children's health and safety, and placed the children at substantial risk of serious physical harm within the meaning of section 300, subdivision (b). Nor does Danielle challenge jurisdiction based on the sustained allegations that Juwan sexually abused Jordynn, placing her and M.W. at substantial risk of serious physical harm within the meaning of subdivisions (d) and (j). Likewise, Danielle has not challenged the court's order declaring Jordynn and M.W. dependent children of the court or its decision to remove the children from her custody.

As a result, even if we were to strike the jurisdiction findings regarding domestic violence, that decision would not affect the juvenile court's jurisdiction in this matter (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979 ["[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [jurisdiction finding involving one parent is good against both; ""the minor is a dependent if the

4

actions of either parent bring [him or her] within one of the statutory definitions of a dependent"'"]; see *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452; *In re Briana V.* (2015) 236 Cal.App.4th 297, 310-311) or limit the court's authority to make all orders necessary to protect the children:  The juvenile court's "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with that discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings."  (*In re K.T.* (2020) 49 Cal.App.5th 20, 25; accord, *In re Briana V.*, at p. 311 ["The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition.  [Citation.]  In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order"]; *In re I.A.*, at p. 1492 ["[a] jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"]; see generally § 362, subd. (a) [the juvenile court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child"].)

As Danielle argues, in limited circumstances reviewing courts have exercised their discretion to consider an appeal challenging a jurisdiction finding despite the existence of an independent and unchallenged ground for jurisdiction when the challenged jurisdiction findings "serve[] as the basis for dispositional orders that are also challenged on appeal," "could be prejudicial to the appellant or could impact the current or any

5

future dependency proceedings" or "could have consequences for the appellant beyond jurisdiction." (*In re J.C.* (2014) 233 Cal.App.4th 1, 4; see *In re D.P.* (2015) 237 Cal.App.4th 911, 917; *In re Drake M.* (2012) 211 Cal.App.4th 754, 763.) This, however, is not an appropriate case to exercise that discretion.

Danielle argues the finding she failed to protect her children, creating a substantial risk of serious physical harm by exposing them to Juwan's violent conduct, is pernicious and could stigmatize her in some future proceeding. However, Danielle has not challenged the finding she knew of the sexual abuse by Juwan and failed to protect the children from him. Such a finding is just as pernicious, if not more so, as the findings regarding domestic violence. Moreover, Danielle has failed to identify any specific prejudice or adverse consequence that could possibly flow from the jurisdiction findings she challenges.

2. *The Juvenile Court Failed To Ensure the Department Complied with ICWA and Related California Law*

a. *Relevant proceedings*

At the time it filed the petition on behalf of Jordynn and M.W., the Department also filed the required Indian Child Inquiry Attachments (form ICWA-010(A)), in which a Department social worker stated she had asked Danielle whether the children had possible Indian ancestry and Danielle "gave [her] no reason to believe" the children may have Indian ancestry. Based on that information, the March 3, 2021 detention report concluded, "The Indian Child Welfare Act does not apply."

The Department filed additional ICWA-010(A) forms in April 2021 when it filed the first amended petition, in which a social worker stated she had interviewed the maternal

6

grandmother, Rita B., on March 23, 2021 regarding whether the children had possible Indian ancestry. The social worker checked the box indicating Rita had given her no reason to believe they did. However, in the jurisdiction/disposition report filed April 14, 2021, the same social worker informed the court Danielle had indicated she had Indian ancestry. Based on Danielle's statement, the social worker questioned Rita—on the same date as the interview identified in the ICWA-010(A)—and informed the court, "[Rita] stated her great grandmother was half Native American of [an] unknown tribe." Rita elaborated, "We don't know what tribe, but we've been in Houma[, Louisiana] all along. It might be the Houma tribe." The social worker requested contact information for Rita's father, but Rita declined to provide it, stating he was almost 80 years old and "won't even know what you talking about." After conducting additional research, the social worker found "that The United Houma Nation is a Louisiana state recognized tribe, but not a federally recognized tribe." (Bold font omitted.) Nevertheless, on April 5, 2021 the Department sent a certified letter to the United Houma Nation inquiring about possible Indian ancestry of the children. The record does not reflect whether a response was received.

The jurisdiction/disposition report stated Juwan had denied having Indian ancestry.[2] The report also recounted interviews with the paternal grandmother and a paternal aunt, but there is no indication either was asked about possible Indian ancestry.

Danielle first appeared for a hearing on April 19, 2021. On that date her attorney filed a Judicial Council form ICWA-020 for each child on which the box was checked for the option indicating

---

[2]     Danielle and Juwan did not appear at the detention hearing, and ICWA issues were not addressed at that time.

7

no known Indian ancestry. The forms were unsigned. During the hearing the juvenile court asked, "As to American Indian Ancestry, does the mother deny that?" Danielle's counsel responded affirmatively. The court found it had no reason to know ICWA applied.

Juwan's counsel filed an unsigned Judicial Council form ICWA-020 on May 3, 2021 indicating Juwan had no known Indian ancestry.

At a hearing on May 3, 2021 the juvenile court found, based on Juwan's form ICWA-020, that ICWA did not apply. The court did not ask Juwan about any possible Indian ancestry despite his telephonic appearance at the hearing. During the hearing Danielle's counsel requested the Department evaluate a maternal great-aunt and a maternal great-uncle for placement of the children. Counsel read their telephone number on the record.

b. *ICWA and the duties of inquiry and notice*

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family."[3] (*In re T.G.* (2020) 58 Cal.App.5th 275, 287; see 25 U.S.C. § 1902.) "ICWA and the controlling

---

[3] "For purposes of ICWA, an 'Indian child' is an unmarried individual under age 18 who is either a member of a federally recognized Indian tribe or is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe." (*In re T.G.* (2020) 58 Cal.App.5th 275, 287, fn. 10; see 25 U.S.C. § 1903(4) [definition of "'Indian child'"] & (8) [definition of "'Indian tribe'"]; see also Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

8

federal regulations (see 25 C.F.R. § 23 (2020)) simply set a floor for minimal procedural protections for Indian children, their families and their tribes; the statute authorizes states to provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA." (*In re T.G.,* at pp. 287-288; see 25 U.S.C. § 1921.) In addition to significantly limiting state court actions concerning out-of-family placements for Indian children (see *In re T.G.*, at pp. 287-288), ICWA permits an Indian child's tribe to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding (see 25 U.S.C. § 1911(c); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

To ensure Indian tribes have the opportunity to intervene in or exercise jurisdiction over a dependency proceeding, investigation of a family member's belief a child may have Indian ancestry must be undertaken and notice must be provided to the appropriate tribes. The investigation requirement is found in section 224.2, subdivision (a), which imposes on the court and child protective services agencies "an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

The duty to inquire "begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child." (*In re T.G., supra*, 58 Cal.App.5th at p. 290; see § 224.2, subds. (a)-(c).) Specifically, the Department

has a duty to inquire whether a child in the Department's temporary custody is an Indian child, which "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."[4] (§ 224.2, subd. (b); see Cal. Rules of Court, rule 5.481(a)(1) [the Department "must ask the child, if the child is old enough, and the parents, Indian custodian, or legal guardians, extended family members, others who have an interest in the child, and where applicable the party reporting child abuse or neglect, whether the child is or may be an Indian child"]; *In re Y.W., supra*, 70 Cal.App.5th at pp. 551-552.)

The duty of inquiry also extends to the juvenile court, which is required to "ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child."  (§ 224.2, subd. (c); see also 25 C.F.R. § 23.107(a) ["[s]tate courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that

_____

[4]     Pursuant to ICWA, "'extended family member' shall be as defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see also Welf. & Inst. Code, § 224.1, subd. (c) ["[a]s used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act"].)

10

the child is an Indian child"]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742.)

The duty of further inquiry is triggered if the juvenile court or the Department "has reason to believe that an Indian child is involved in the proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child . . . ." (§ 224.2, subd. (e); Cal. Rules of Court, rule 5.481(a)(4); *In re Y.W., supra*, 70 Cal.App.5th at p. 552.) That further inquiry requires interviewing, "as soon as practicable," extended family members, contacting the Bureau of Indian Affairs and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e) & (e)(2)); see also Cal. Rules of Court, rule 5.481(a)(4).)

If the further inquiry "results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052, italics omitted; see 25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a) [notice under ICWA "shall be provided" if the court, social worker, or probation officer "knows or has reason to know . . . that an Indian child is involved"].)

"The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*In re Antonio R., supra*, 76 Cal.App.5th at p. 430]; accord, *In re Benjamin M., supra*, 70 Cal.App.5th at p. 742 ["the agency has a duty to gather information by conducting an initial inquiry, where the other party—here the parent . . . has no similar obligation"]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 706

["[t]he court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal"].)

  c. *The Department did not adequately investigate the children's possible Indian ancestry*

As discussed, the Department had a duty pursuant to section 224.2, subdivision (b), to ask not only the parents, but also extended family members whether the children had possible Indian ancestry.[5] While the Department did interview Danielle and maternal grandmother about possible Indian ancestry, it failed to follow up on their stated belief they did in fact have such ancestry. After the maternal grandmother explained she believed she had Indian ancestry, possibly in the United Houma Nation, the Department appropriately asked for contact information for the maternal great-grandfather. It is

---

[5] The Department's duty of inquiry, beginning at initial contact, as now defined in section 224.2, subdivision (b), was added to the Welfare and Institutions Code by Assembly Bill No. 3176 (Stats. 2018, ch. 833, § 5), effective January 1, 2019— that is, two years before the Department filed the initial dependency petition in this case. Assembly Bill No. 3176 substantially revised the provisions of California's ICWA-related statutes to conform their language to language in recently adopted federal regulations and, recognizing California's higher standard for investigating whether a child may be an Indian child, to specify more clearly the steps a social worker, probation officer and court are required to take in making an inquiry into a child's possible status as an Indian child. (*In re T.G., supra*, 58 Cal.App.5th at p. 296.)

12

understandable maternal grandmother did not wish to provide that information given her father's age, but just because he was elderly and may not understand the intricacies of the juvenile dependency system does not necessarily mean he would not have information regarding the family's background. The Department had a responsibility to inquire further, either by asking Danielle for the contact information, asking for information for other maternal relatives or searching publicly available sources. The Department did none of those things. In fact, once the Department was given contact information for a maternal great-aunt and maternal great-uncle, there is no indication it attempted to contact those individuals regarding any possible Indian ancestry. It is also concerning the Department never asked Danielle why she initially stated she did have Indian ancestry but later stated she did not. In addition, the Department did not ask the paternal grandmother or paternal aunt about Indian ancestry. Failure to inquire of these relatives whether the children had Indian ancestry, especially given the maternal grandmother's claim of Indian ancestry, was error under the plain language of section 224.2, subdivision (b). (See *In re J.C.* (Apr. 4, 2022, B312685) __ Cal.App.5th __, __ [2022 Cal.App. Lexis 281, at *10-11] ["[t]he Department did not fulfill its duty to conduct an adequate inquiry into whether J.C. may be an Indian child because it did not ask any extended family members—some of whom were readily available—whether J.C. had any possible Indian ancestry"]; *In re Antonio R., supra*, 76 Cal.App.5th at pp. 430-431 [Department failed to fulfill duty of inquiry by failing to ask family members about Indian ancestry despite multiple contacts with relatives]; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [failure to speak to anyone other than

13

mother about possible Indian ancestry was error]; *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 553 [Department failed to satisfy duty to inquire by failing to contact relatives; "once the social worker learned of a potentially viable lead to locate [relatives], she made no effort to pursue it"].)

The juvenile court also erred in failing to ensure the Department satisfied its duty of inquiry and in finding ICWA did not apply absent an adequate inquiry. (See *In re J.C.*, *supra*, __ Cal.App.5th at p. __ [2022 Cal.App. Lexis 281, at *12] ["[t]he juvenile court, too, did not satisfy its duty to ensure the Department adequately investigated whether J.C. may be an Indian child. There is no indication in the record that, after the detention hearing, the juvenile court gave ICWA another thought in the almost three years of this dependency case"]; *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 431 ["[a]lthough section 224.2, subdivision (b), places on the Department the duty to inquire, including of extended family members, section 224.2, subdivision (a), makes clear that the 'affirmative and continuing duty to inquire' whether a child is or may be an Indian child rests with both the Department *and the court*"].)

The Department argues it adequately conducted its initial investigation into possible Indian ancestry by interviewing the parents and the maternal grandmother. The parents' denials of Indian ancestry and the maternal grandmother's uncertainty, the Department argues, support the court's conclusion that ICWA did not apply. This assertion "ignores the express obligation that section 224.2, subdivision (b), imposes on the Department to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry. By requiring the Department to inquire of a child's extended family members as to

14

the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*In re Antonio R., supra*, 76 Cal.App.5th at p. 431; accord*, In re J.C., supra*, __ Cal.App.5th __ at p. __ [2022 Cal.App. Lexis 281, at *15] ["the extensive inquiry requirements under section 224.2 presume that a parent's declaration on the ICWA-020 form, reliable or not, is not enough and that the child protective agency must do more than look at the form"]; *In re Y.W., supra*, 70 Cal.App.5th at p. 556 ["the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child" is "to obtain information the parent may not have"].) Further, the maternal grandmother's uncertainty as to which tribe the family belonged to and her mention of a tribe that was not federally recognized did not relieve the Department of its duty to investigate further. "[W]hen a parent or other family member has informed a dependency investigator or the juvenile court of the child's possible Indian ancestry, the use of a tribal name that does not correspond to that of a federally recognized tribe—or saying 'Indian' but providing no tribal name at all—does not, without more, relieve the child protective agency of its affirmative obligation to interview family members and others who could be expected to have relevant information concerning the child's status or the court of its duty to ensure an appropriate inquiry has been conducted before concluding ICWA does not apply to the case." (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 786.)

As we recently explained in *In re Antonio R.*, there are myriad reasons parents may not be aware of, or may not want to divulge, their Indian ancestry to the Department, such as fear of being identified as Indian, failure to understand the purpose of

15

self-identifying in dependency cases or the imprecision of orally transmitted family histories. (*In re Antonio R., supra,* 76 Cal.App.5th at p. 432.) Accordingly, a parent's denial of Indian ancestry or a relative's uncertainty about the tribal affiliation, even where the individual is in contact with his or her biological family, does not eliminate the Department's affirmative and continuing duty to question extended family members regarding possible Indian ancestry. Nor can such an error be deemed harmless based on the presumption that extended family members would not have any additional information. (See *id.* at p. 435 ["[w]here the Department fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible. Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error where there is an inadequate initial inquiry"]; see also *In re Benjamin M., supra,* 70 Cal.App.5th at pp. 744, 745 ["a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child"; "[w]hile we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother"].)

16

## DISPOSITION

The jurisdiction findings and disposition order are conditionally affirmed. On remand the juvenile court must promptly direct the Department to make a meaningful and thorough inquiry regarding the children's possible Indian ancestry, including interviews with the paternal and maternal extended family members and any other persons who may reasonably be expected to have information regarding the children's possible Indian ancestry.

If the juvenile court determines after a hearing that the Department has satisfied its inquiry and notice obligations under ICWA and California law and the children are not Indian children, then the jurisdiction findings and disposition order shall remain the order of the court. If the court finds that the children are Indian children, the court shall vacate the jurisdiction findings and disposition order and conduct further proceedings in compliance with ICWA and related California law.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.